| UNITED STATES BANKRUPTCY COURT | **FOR PUBLICATION** |
|---|---|
| WESTERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------------

In re

    Bernard T. Grucza
    Heather R. Grucza                                 Case No. 09-11140 K
                                  Debtors

-----------------------------------------------------------------

## ORDER AND OPINION

       This case presents a question that seems to have no precedent in New York law (perhaps because a five-fold increase in the state homestead exemption - - from $10,000 to $50,000 - was enacted just four years ago, thereby making more of such issues worth arguing).

       When $7,000 worth of cement block (the Chapter 7 Trustee has a bid in that amount for the block) is sitting on the Debtor's homestead land, but not yet installed as a retaining wall necessary to prevent severe damage to the home, is it non-exempt personalty that the Trustee may sell, or is it part of the Debtors' exempt homestead? (Perhaps importantly, the block was bought pre-petition with the Debtors' tax refund; it was not bought on credit from a lender whose debt will be discharged, as discussed later.)[1]

       The Court finds that the New York homestead exemption, construed liberally (as it must be construed[2]), is broad enough to encompass the block.

---

[1] One ought not to emphasize this distinction because from one philosophical perspective, using free cash to make purchases instead of paying debt is spending "borrowed money."

[2] "[E]xemption laws, though in derogation of the common law, are to be liberally construed in favor of the beneficiary in order to carry out their apparent beneficent purpose." McKinney's Statutes § 291, Special Privileges and Exemptions.

## FACTS

The evidence is clear that the Debtors' home is greatly threatened by the erosion of a massive dirt cliff, topped by large trees, within a few yards of the rear foundation of the house. The house is truly endangered. Though conceivably worth $ 436,000 <u>but</u> <u>for</u> that condition, any possible purchaser of the house would have to remediate that condition, and so would pay less.

The Debtors bought the blocks with tax refund money just prior to filing their Chapter 7 petition. It was their intention to move and install the block themselves. It simply didn't get done before the petition was filed.

Now the Trustee wishes to sell the blocks for $ 7,000.00.

The Debtors argue that it is "equitably" part of their exempt homestead, even though it is not "in-place" and, thus not yet a "fixture" on their homestead.

The Court agrees with the Debtors, but wishes to articulate a very narrow set of factors, for future cases that might involve a myriad of possible similar claims for other types of materials or devices not yet permanently "affixed" to the land.

## NEW YORK EXEMPTION LAW AND LAW OF FIXTURES

New York C.P.L.R. § 5206 provides New York's homestead exemption. It simply states, "property of one of the following types, not exceeding $50,000 in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly

for the purchase price thereof: (1) a lot of land with a dwelling thereon, (2) shares of stock in a cooperative apartment corporation, (3) units of a condominium apartment, or (4) a mobile home."

The statute is silent as to the matter of appurtenances, whether they be affixed to the land (such as, perhaps, a free standing garage built upon a foundation) or not affixed to the land (such as a free standing tool shed, perhaps). New York exemptions must be construed liberally in favor of the debtor.[3]

Initially, we turn to the New York State Law of Fixtures. Doing so, we find that what had begun a long time ago as a black letter principle that something that is not physically attached to the realty could not be a fixture, "has been enlarged to include items that are 'constructively annexed' to the land." *In re City of New York,* 11 N.Y. 3d 353 (N.Y. 2008). Chattels that have been examined by the New York Courts under the doctrine of "constructive annexation" range from the drawers that slid into built-in cabinets in a country store (*Tabor v. Robinson*, 1862 Westlaw 4457 (N.Y. General Term 1862)), wherein the drawers were found to be part of the realty that the plaintiff had purchased from the defendant, to power tools in a woodworking shop (*In re City of New York, supra*) which were found not to be part of the real estate for purposes of a condemnation award. Most useful for current purposes are cases that examined chattels that were so heavy as not to need any type of affixation to the realty.

Thus in the case of *Snedeker v. Warring*, 12 N.Y. 170 (N.Y. 1854) the defendant had purchased from the County Sheriff a home, in the yard of which stood a three ton

---

[3]Id.

ornamental statue of George Washington and a 200 pound sundial. They were in place on the land when the land was purchased by the defendant at a foreclosure sale. Later the Sheriff sought to levy on the items to satisfy an unrelated judgment, and the new landowner refused to permit it. The highest court of the state ruled that "a thing may be as firmly affixed to the land by gravitation as by clamps or cement. Its character may depend much upon the object of its erection. Its destination [and] the intention of the person making the erection often exercise a controlling influence, and its connection with the land is looked to principally for the purpose of ascertaining whether the intent was that the thing in question should retain its original chattel character, or whether it was designed to make it a permanent accession to the lands."

The author of the opinion found irrelevant the fact that the original owner of the land, who also sculpted the statue, testified that he intended to sell the statue when an opportunity arose. The court stated "his secret intention in that respect can have no legitimate bearing on the question. He clearly intended to make use of the statue to ornament his grounds, when he erected for it a permanent mound and base; and a purchaser had a right so to infer and to be governed by the manifest and unmistakable evidences of intention."[4]

The court further stated that the question of "whether the pyramids of Egypt or

---

[4] The case rested on the sufficiency of the evidence of intent to make the sculpture a permanent ornament. The sculptor/prior owner had built an elevated mound upon which to set the statue. That was one factor bearing on intent.

This writer deems it to be of no moment in the present case that whatever "pad" or foundation slab the block was to be moved to had yet to be constructed. The fact that some homeowners know that the best method of building an important retaining wall is to lay a foundation and reinforce the block with steel bars and with concrete fill, does not change the result. The fact that the railroad ties this writer once installed to "terrace" foundation plantings and walkways failed miserably in a heavy rain did not make the railroad ties "personalty." The decision as to what is personalty and what is an exempt homestead ought not to rest on engineering principles. Rather (as the cases say) it is intent, and the right of a purchaser to infer an intention of permanence (*Snedeker*).

Cleopatra's Needle are real or personal property, does not depend on the result of a inquiry by the antiquarian whether they were originally made to adhere to their foundations with wafers, or ceiling wax or a handful of cement.  It seems ". . . puerile to make the title to depend upon the use of such or any other adhesive substances, when the great weight of the erection is a much stronger guarantee of permanence."  (*Snedecker, supra*)

The court also ruled that the sundial was part of the realty.

This leaves no doubt in this writer's mind that if the block in question today were stacked layer upon layer, and without any fixation whatsoever, in such a way as to protect the house from the eroding cliffside, it would be found to be part of the exempt homestead, despite the fact that there would be no actual attachment to the land, but rather merely permanence afforded by the wall's great weight.

This leaves, then, only the question of whether the fact that the debtor had yet to move the stack of block from "here" to "there" is dispositive.

Anyone who has ever owned a suburban single family dwelling and who does the work on it himself or herself knows that such good fortune involves a constant movement of personalty into the realty.  Lumber becomes basement or garage shelving, or a sun deck.  Shrubs become landscaping.  Posts and rails become a fence.  A pallet of asphalt shingles becomes a new roof, and so forth.  More importantly, for purposes of today's analysis, is that it is just as common for something that is affixed to the real estate to be temporarily "unaffixed" in order to accomplish repairs or improvements.  Thus, for example, valuable paneling in a "finished" basement might be totally removed in order to accomplish foundation repairs or waterproofing,

and then the paneling is reinstalled. Shrubs may be dug up in order to repair the sewage line connection to the house, and then the shrubs are replanted. Valuable paving blocks may be temporarily removed so that the surface thereunder may be re-graded to improve drainage, and then the block re-installed. Thousands of dollars of kitchen cabinets or other semi-"built-ins" may be removed in connection with a reconfiguration or upgrading of the space, then re-installed. There are, of course, many other illustrations, but the foregoing list makes the point.

It is hard to imagine that the State Legislature in providing an exemption for "a lot of land with a dwelling thereon" intended that a judgment creditor would be able to levy upon such items between the time that they have been "unaffixed" and the moment that they are re-installed.

Assuming that to be the case, and given the fact that these blocks would be "constructively affixed" to the realty by "gravitational force" if they were stacked in a location useful to protect the dwelling from the cliff, they would be exempt as part of realty. And if they had once been so stacked, and now were disassembled in order to be relocated to a more effective position, they would remain exempt during the interim.

This analysis leads this Court to conclude that although the law of fixtures is useful in interpreting the phrase "a lot of land with a dwelling thereon," it is not always dispositive. Rather, a liberal interpretation of the statutory definition of the homestead exemption requires a common sense interpretation that is <u>informed</u> by the law of fixtures, but also requires consideration of the totality of circumstances.

In this case, the necessity of the blocks to abate a hazardous condition that

threatens the dwelling is the most significant factor.  A similar circumstance might exist where, at the time of the filing of the petition in bankruptcy, the debtor has removed a rotted roof on the dwelling and has covered over the dwelling with a tarpaulin, and has the requisite load of plywood and shingles sitting in the garage.  If this were a humid, southern state, a similar case might be made for a new central air conditioning unit sitting in the garage, to replace one that has ceased functioning, given that such units are necessary in some climates to prevent ruination of the house through mold.  In our own climate, no one would doubt that detachable storm windows are part of the realty when they are in place during the winter months, but what is their status when they are leaning against the garage wall in July?  If a rotted overhead garage door has been removed, and panels and parts for the new $3,000 garage door have been delivered to the premises but not yet installed by the homeowner, is that the same as the case of the house with no roof?

It seems to the Court that the matter is not susceptible of general principles, but must be addressed on a case-by-case basis in light of a number of different factors.

These questions should be asked as to the materials/equipment/items sitting on the premises at the time of the filing of the petition:

Are they to make a new improvement or to replace something that no longer serves their purpose?  For example, was the load of lumber bought to build a deck where there was none, or to replace a rotten one, or to build a wheelchair ramp to accommodate a family member who has become wheelchair bound?

Was the work in progress?  (For example, the house with the roof already

removed.)

Is there a hazard to be remedied by a permanent placement not yet achieved? (Such is the case here.)

Do the items' use change seasonally? (Such as the storm windows in the garage in summer or a patio awning in winter.)

Were they previously affixed but temporarily removed? (The kitchen cabinets during remodeling.)

Is it (or are they) reasonably necessary to the normal use of the dwelling? (Such as a new furnace or water heater, about to be installed as a replacement for one that is failing or has failed.)[5]

Is the project an improvement or upgrade rather than maintenance or repair? There are at least two categories as to this factor: extravagance and aesthetics. For example, a newer/bigger/better hot tub to replace the one already installed, or a whirlpool bath to replace a perfectly serviceable tub still able to serve the resident well, would be extravagance. Ceramic tile or hardwood to replace a vinyl tile or carpet might simply be an aesthetic upgrade. (A harder question might be presented as to paneling and light fixtures to be installed to turn a basement into a playroom for growing children.)

Is there any evidence of fraudulent intent? Many types of exemptions may be tainted by bad faith. "Bankruptcy planning," of itself, is not necessarily fraudulent. The typical indicia of fraud or bad faith would be as applicable to the homestead exemption discussed here,

---

[5]One "stockpiled" for future use might not pass muster.

as they are to other exemption claims. Whether the pertinent items were charged to accounts that will be discharged, rather than bought with savings, a tax refund, or with exempt income or a loan from a retirement fund, may be considered. (But see Footnote 1, *supra*.) Changing residency to "create" a homestead where there was none might not pass the "smell test:" e.g., moving into an investment property that is in the process of rehabilitation, in contemplation of availing oneself of the benefits of today's ruling. (There is no hint of fraud or bad faith in the case at Bar.)

Is the personalty reasonably necessary to the regular and proper enjoyment of the realty? The trite illustration of this factor under the doctrine of "constructive annexation" is that of the keys to the locks on the doors: they are part of the "realty," under the doctrine.[6] A more substantial example might be the detachable storm windows that are in storage in the garage in summer (and conversely, detachable screens in winter), or a wooden stairway built down a steep incline to the pond or stream access, from the yard.

This list of factors is not meant to be complete. The recent five-fold increase in New York's homestead exemption[7] set the stage for the case at Bar. $100,000 in exempt equity provides a lot of room for seeking to claim that what seemingly is simply non-exempt personal property, is part of the homestead exemption, at law. As such cases arise, other factors might be derived.

---

[6] *Beardsley & Kirkland v. Ontario Bank*, 31 Barb. 619, 1859 WL 8074 (N.Y.Sup. 1859); *Walker v. Sherman*, 20 Wend. 636, 1839 WL 3283 (N.Y.Sup. 1839).

[7] It went from $10,000 to $50,000 in August of 2005; $100,000 for husband and wife owners filing jointly.

CONCLUSION

The block is part of the "lot of land with a dwelling thereon" that is the Debtors' exempt homestead. This is because that phrase is merely informed by the law of "fixtures," and not determined by it, and exemptions are to be liberally construed in favor of a debtor. The fact that the block has not yet been moved into a place where it would clearly be a fixture (by virtue of constructive annexation) is too slender a need to distinguish this case from one in which the wall was constructed pre-petition, but had to be disassembled in order to be moved to a more effective placement.

SO ORDERED.

Dated:	Buffalo, New York
	September 9, 2009

s/Michael J. Kaplan
_____
U.S.B.J.